105    529
134    152

CORNELIA G. FULLER v. THE CITY OF GRAND RAPIDS.

*Municipal corporations—Paving—Widening roadway—Rights of abutting owner—Conversion.*

1. The resolution of the common council of a city, declaring the paving of a street to be a necessary public improvement, was silent as to the width of the roadway. The estimate of the board of public works, previously made and submitted to the council, specified a roadway 38 feet wide, being the width of the roadway as then in use. Before the contract for paving the street was entered into, the plans and specifications were filed, showing the roadway to be 42 feet wide, and bids were solicited on such plans and specifications, which had been adopted by the board of public works and council, and the contract was let accordingly. And it is held that the change in the width of the roadway did not vitiate the proceedings; citing *Williams v. City of Detroit*, 2 Mich. 560; *Davies v. City of Saginaw*, 87 Id. 439.

2. Where land has been appropriated to the public use for street purposes, either by condemnation proceedings or by dedication, the owner, if by the former method, has been compensated in damages for the taking of the land, and, if by the latter method, he has waived compensation, except as he may have considered himself benefited by the construction of the public highway; and in either case the municipality acquires the right to use the entire street for public travel.

3. The construction of the roadway in such a street of a width less than that of the street does not bind the municipality to maintain the roadway at that width for all time, but it may increase or decrease the width of such roadway as in its judgment the needs of the public demand.

4. A roadway of a width less than that of a city street was used for some years, and an adjoining lot owner, at his own expense, constructed a stone wall along the curb line of the roadway and to its full height, and over the space between the roadway and the line of his lot constructed a plank sidewalk, all on his own motion, and without any contract with the city. And it is held that the silent acquiescence of the

city in the construction of said wall and walk did not bind it either to permit the wall and walk to remain, or to remove and rebuild the same, when public necessity required that the roadway should be widened.

5. A contract was awarded to repave the roadway to an increased width, and the owner of the lot refused, on due notice, to remove the wall, built as aforesaid, whereupon the contractor, under the direction of the city, removed the sidewalk, placing the planks and timber on said lot, covered up the wall, and paved above it. The lot-owner sued the city in trover for the conversion of the wall and sidewalk to its use. And it is held that in removing the walk in order to make the improvement, and in placing the planks and timber on plaintiff's lot, neither the city nor the contractor was guilty of converting said material.

6. The act of depositing earth on plaintiff's lot, being unnecessary, was not the natural result of making the improvement, and the trespass was one, therefore, for which the contractor, and not the city, was liable.

Error to superior court of Grand Rapids. (Burlingame, J.) Submitted on briefs May 3, 1895. Decided May 28, 1895.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Sweet, Perkins & Judkins*, for appellant.

*Henry J. Felker* (*William Wisner Taylor*, of counsel), for defendant.

GRANT, J. December 4, 1886, plaintiff purchased from one John Youell lot 1 of Bryan & Ball's addition to the city of Grand Rapids, situated on the corner of East Fulton and South Waterloo streets. The deed excepted the right of way for Fulton street. She was the owner at the time of the grievance complained of. In 1884, Fulton street was opened, from Waterloo street to the Fulton street bridge, 66 feet wide. It became necessary to fill in the street between those points, so that the roadway, which was then fixed at the width of 38 feet, was about

6 feet above the level of the lot.  Mr. Youell, at his own expense and a cost of about $680, constructed a stone wall along the curb line of the roadway and to its full height. Over the space between the roadway and the line of his lot he constructed a plank sidewalk 14 feet wide, at an expense of about $200.  The lot was vacant.  On July 5, 1892, a contract was awarded to one Sekell to repave the roadway 42 feet wide.  The sidewalks were to be 12 and 14 feet wide.  The proceedings prior to the letting of the contract were regular, and need not be given in detail. August 11, 1892, the board of public works served a written notice upon plaintiff to remove the area wall within 15 days.  She replied to this notice with a written communication, setting forth her claims, and positively declining to remove the wall, and remonstrating against the action of the city.  The contractor then, under the direction of the city, removed the sidewalk, placing the planks and timbers upon her lots, covered up the wall, and paved above it.  She thereupon instituted this suit, an action of trespass on the case, for the conversion of the wall and sidewalk to the use of the defendant.  The court directed a verdict for the defendant.

The plaintiff's claims are these:

"1. The resolution of the common council, that the *paving* of the street was a necessary public improvement, did not carry with it the right to widen the grade or the roadway on a part of the street, and such change was not properly authorized.

"2. The area wall was her property.  Even if the city, under its general charter authority over streets, had a right to remove it after taking proper steps, it had no right to appropriate it to its own use.  Such appropriation amounted to a *taking*, and falls within the constitutional prohibition.

"3. There was an absence of such impartiality as a city is bound to exercise in its dealings with its citizens.

"4. The destruction of the sidewalk and the filling of the area constituted damage, for which, under the circumstances of this case, the city is liable.

"5. The deposit of earth on plaintiff's lot was a further

damage, from which defendant could not escape liability by removing it after this suit was commenced, and as to whether it had been removed at all or not there was a conflict of testimony, raising a question of fact, which should have been submitted to the jury."

1. The resolution of the common council declaring the paving of this street to be a necessary public improvement was silent as to the width of the roadway. The estimate of the board of public works, previously made and submitted to the council, specified a roadway 38 feet wide. Before the contract was entered into plans and specifications were filed showing that the roadway was to be 42 feet wide. Bids were solicited upon these plans and specifications, which were adopted by the board of public works and the council. The change from a width of 38 feet to 42 did not vitiate the proceedings. *Williams v. City of Detroit*, 2 Mich. 560; *Davies v. City of Saginaw*, 87 Id. 439.

2. The action is in trover, and the question is, did the defendant city wrongfully convert the wall and sidewalk to its use? The land used for this street had been appropriated to the public use either by condemnation proceedings or by dedication. If the former, the owner had been compensated in damages for the taking of the land; if the latter, he had waived compensation, except as he might have considered himself benefited by the construction of a public highway. In either case, the city acquired the right to use the entire street 66 feet wide for public travel. The construction of the roadway, in 1884, to the width of 38 feet, did not bind the corporation to maintain it at that width for all time. Municipal corporations may increase or decrease the width of their roadbeds and sidewalks as in their judgment the needs of the public demand. These are elementary principles, and counsel for plaintiff do not contend to the contrary. The widening of the street necessitated the temporary removal of the sidewalk and the removal or covering of the wall. No contract for its erection was made between

the city and Mr. Youell. The silent acquiescence of the city to its construction did not bind it either to permit it to remain or to remove and rebuild it when public necessity required that the roadway should be widened. Mr. Youell, at his own expense and for his own benefit, chose to erect a wall in a public street 14 feet from the line. By this act he obtained no property right in the street. The sole property right obtained by him or his grantee was in the stone, with the right to remove it whenever the city desired to use the space occupied by it. Owners of adjacent lands acquire no permanent rights in the public streets by the erection of structures for their own use and benefit. So long as the space so occupied is not required for public use, they are usually permitted, but, when the public demands it for the use for which it has been condemned or dedicated, the private use must go, and the structures be removed. The opportunity to remove them is all the right the law gives the owners.

The authorities cited do not sustain the contention of the learned counsel. In *Fisher v. Thirkell*, 21 Mich. 1, the opinion goes no further than to hold that excavations under public streets, properly and safely constructed for the benefit of the adjacent owner, and which do not interfere with the public use, are not unlawful.

*Grand Rapids & Indiana R. R. Co. v. Heisel*, 38 Mich. 62, decides that a commercial steam railroad cannot be authorized in a city street without compensating adjacent owners.

*Muzzey v. Davis*, 54 Me. 361, decides that granite curb stones, put in by the lot owner, were his property, and the city was liable for removing and selling them.

In *Sheldon v. Kalamazoo*, 24 Mich. 383, the corporation tore down the plaintiff's fences upon the assertion that he was occupying part of a village street, and it was held that he could not be dispossessed without legal process.

In *Vanderlip v. City of Grand Rapids*, 73 Mich. 522, the

city proposed to build an embankment which would extend back 35 feet on plaintiff's land, and cover up the front of her house and barn several feet, without compensation or condemnation, a proceeding unfounded in reason or authority. In the present case there is no encroachment upon plaintiff's land, nor any interference with the enjoyment thereof.

The contract and specifications contained the following:

"All plank walks on the street to be taken up with care and be deposited on the adjoining premises, unless previously cared for by property owners. All plank approaches to crosswalks or sidewalks, required to be taken up in excavating approaches in intersecting streets, shall be taken up with care, and be deposited in some safe place, and, when such approaches are graded and crosswalks laid, said plank walks and approaches shall be relaid in as good condition as before they were disturbed."

It became necessary to remove the sidewalk in order to make the improvement. In removing it, and placing it upon plaintiff's lot, neither the city nor the contractor was guilty of converting the material of which it was built. After the improvement was completed it appears that a sidewalk was constructed, but by whom or at whose expense does not appear. Certainly, if the city rebuilt it, plaintiff has not been injured.

3. It is insisted that there was some evidence tending to show that some earth was deposited upon plaintiff's land, and that this question, and the subsequent damages, should have been submitted to the jury. The amount of earth, if any, was trifling, and the damage nominal. It is questionable whether the declaration is broad enough to include a mere act of trespass *quare clausum fregit*. However this may be, the act of depositing earth upon her land was unnecessary, and not the natural result of making the improvement. The trespass,

therefore, was one for which the contractor, and not the city, was liable.

Judgment affirmed.

The other Justices concurred.