**Frances DUCHEK and Arthur Duchek,**
**Plaintiffs/Appellees,**

v.

**Rudolph JACOBI and Elfi Jacobi,**
**Defendants/Appellants.**

No. 79–3811.

United States Court of Appeals,
Ninth Circuit.

Submitted March 11, 1981.

Decided May 29, 1981.

John A. Bergen, Santa Ana, Cal., for defendants-appellants.

Jacob Paull, Los Angeles, Cal., for plaintiffs-appellees.

Before MERRILL and TANG, Circuit Judges, and McNICHOLS,* District Judge.

TANG, Circuit Judge.

This appeal follows the execution and sale of real property in satisfaction of a judgment secured in federal district court against Rudolph and Elfi Jacobi. The Jacobis contend that the confluence of Federal Rule of Civil Procedure 69(a) and California Civil Code §§ 1245, 1247, deprived the district court of jurisdiction to enforce the judgment. We disagree and affirm the district court.

Rudolph and Elfi Jacobi [Jacobi] were the owners and operators of a traveling circus known as the "Rudy Brothers Circus". During the winter months, the circus, its equipment and assets were quartered on real property in Riverside County, California. Part of this property was improved with a residence and the other portion was unimproved and used to store the circus equipment.

Katherina Duchek was killed in a circus accident on July 17, 1963 while in Jacobi's employ. Arthur and Frances Duchek, the husband and daughter of Katherina, brought a diversity action in tort in the Central District of California against Jacobi. Following trial they were awarded the sum of $25,000. After that action had been filed but before judgment was entered, Rudolph Jacobi, apparently without any consideration, conveyed the circus business and all of its assets to his wife Elfi. The Ducheks brought the present action to set aside the transfer of assets as fraudulent. The district court entered a $19,395.77 judgment against Jacobi and an abstract of judgment was recorded in Riverside County. In the meantime, on October 24, 1973, Jacobi recorded a Declaration of Homestead affecting the subject real property.

Following judgment, the district court issued a writ of execution that was subse-quently recorded. Duchek then filed in district court for a petition for appointment of appraisers of homestead pursuant to Cal. Civ.Code §§ 1245–1261 (West 1954). After the hearing, and over Jacobi's objections to the jurisdiction of the court, the federal magistrate ordered that three of the four parcels of real property be set aside from the homestead exemption and sold pursuant to the writ of execution. The execution sale was subsequently held and the writ returned.

Jacobi's sole contention on appeal is that the district court did not have jurisdiction to enforce its judgment in setting aside as fraudulent the conveyance from Rudolph to Elfi Jacobi.

Federal Rule of Civil Procedure 69(a) provides in part:

The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

In observing the mandate of rule 69(a), the district court applied the "procedure and practice" of California, the state in which it sat. The relevant California statutes identified by the court were Cal.Civ. Code §§ 1245, 1247.[1]

Section 1245 provides:

When an execution for the enforcement of a judgment obtained in a case not within the classes enumerated in section [1241] is levied upon the homestead, the judgment creditor may at any time within sixty days thereafter apply to the *superior court of the county* in which the homestead is situated for the appointment of persons to appraise the value thereof, and if such application shall not

---

* Honorable Robert J. McNichols, Chief U. S. District Judge for the Eastern District of Washington, sitting by designation.

1. Because Fed.R.Civ.P. 69(a) requires the application of state practice and procedure "existing at the time the remedy is sought", the court must apply sections 1245 and 1247 as they stood prior to the 1980 amendments.

be made within sixty days after the levy of such execution the lien of the execution shall cease at the expiration of said period, and no execution based upon the same judgment shall thereafter be levied upon the homestead.

Cal.Civ.Code § 1245 (emphasis added).

Section 1247 provides that "[t]he petition *must* be filed with the clerk of the superior court". *Id.* § 1247 (emphasis added).

■ Jacobi argues that, although the district court otherwise assiduously tracked the appropriate California procedures to enforce the judgment, sections 1245 and 1247 divested the federal district court of jurisdiction to enforce the judgment. In other words, Jacobi argues that rule 69(a) may be construed to eliminate a federal district court's jurisdiction to enforce judgments when the applicable state procedure facially requires that proceedings be held in a state tribunal.

Such an interpretation of rule 69(a) radically distorts the rule's plain language. The rule unmistakably contemplates proceedings in federal court according to state practice and procedure, not jurisdiction in state courts: "[E]xecution shall be in accordance with the practice and procedure of the state in which *the district court is held.*" Fed.R.Civ.P. 69(a) (emphasis added).

No other interpretation of Federal Rule of Civil Procedure 69(a) has ever prevailed. That rule 69(a) is one of procedure and practice, not jurisdiction, is made obvious by reference to the advisory notes attending it: "[T]he rule specifies the applicable state *law* to be that of the time when the remedy is sought, and *thus renders unnecessary, as well as supersedeas, local district court rules.*" Fed.R.Civ.P. 69(a) note (1976) (emphasis added). As we observed in *Hamilton v. MacDonald,* 503 F.2d 1138 (9th Cir. 1974):

The drafters of the Federal Rules, in merging the two sets of procedures formerly applicable to federal courts sitting in law or equity, did not consider development of an entirely new series of rules on supplementary proceedings worthwhile. They therefore simply continued former practice. As most states had adequate supplementary proceedings to enforce money judgments, Rule 69(a) followed R.S. § 916 in adopting state practice for execution of a money judgment, whether it derived from a formerly legal judgment or equitable decree. Previously available federal remedies to enforce equitable decrees, including writs of assistance, continued, on the other hand, to be available under the terms of Rule 70, without reference to state practice.

*Id.* at 1148–49 (citation and footnote omitted).

Nothing in this recitation of the purpose behind rule 69(a) remotely suggests that a federal district court must cede jurisdiction to a state tribunal when a literal reading of the applicable state law indicates that enforcement proceedings must be held in a certain state court. Indeed, an *in pari materia* construction of rules 69(a) and 70 accentuates the absurd results of such a notion. Because enforcement of equitable judgments under rule 70 is not referable to state law, only the enforcement of legal judgments under rule 69 would be potentially susceptible to state court jurisdiction. Surely there is no intent manifest in either rule 69(a) or rule 70 to make federal jurisdiction over enforcement proceedings contingent upon a characterization of a judgment as either legal or equitable.

■ In the absence of controlling federal statutes, "the district court has the *same authority* to aid judgment creditors ... as that ... provided to state courts under local law." *United States ex rel. Goldman v. Meredith,* 596 F.2d 1353, 1357 (8th Cir. 1979), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1980). At least one court has specifically found that rule 69(a) cannot be read to relinquish federal jurisdiction, *Green v. Benson,* 271 F.Supp. 90, 93 (E.D. Pa.1967), and several others have either expressly or tacitly proceeded under the same assumption. *See, e. g., Yazoo & M. V. R. R. Co. v. Clarksdale,* 257 U.S. 10, 16, 42 S.Ct. 27, 28, 66 L.Ed. 104 (1921) (in resolving a separate jurisdictional question, Court notes

that "authority of United States Marshal to make sales upon judgments in the United States Courts and to give title thereby is not drawn into question . . . ."); *Travelers Ins. Co. v. Lawrence*, 509 F.2d 83, 88 (9th Cir. 1974) (court assumes that under Fed.R. Civ.P. 69(a) district court had jurisdiction in mortgage foreclosure sale in Oregon); *Weir v. United States*, 339 F.2d 82, 84 (8th Cir. 1964) (district court had jurisdiction to apply Arkansas law); *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2nd Cir. 1963) (district court had jurisdiction to apply Connecticut law in rule 69(a) proceeding); *Edmonston v. Sisk*, 156 F.2d 300, 302 (9th Cir. 1946) (assuming jurisdiction would lie with federal district court, not "county judge", in absence of specific federal law); *Mission Bay Campland v. Sumner Financial Corp.*, 71 F.R.D. 432, 433 & n. 1 (M.D.Fla. 1976) (district court asserts federal marshal's jurisdiction under rule 69(a) even though Florida statute authorized "sheriff" to perform the function); *Blood v. Munn*, 155 Cal. 228, 232, 100 P. 694, 696 (1909) (state court concedes that district court in bankruptcy proceedings has jurisdiction to apply California homestead exemption); *cf. Ivor B. Clark Co. v. Hogan*, 296 F.Supp. 398, 402 (S.D.N.Y.), *modified on other grounds*, 296 F.Supp. 407 (1968) (district court in New York, adhering to New York conflict of laws, applies Georgia law rather than ceding jurisdiction to Georgia state courts).

■ The principal error in Jacobi's argument is the assumption that state law must be applied in a hypertechnical manner in rule 69(a) proceedings. We are not free to pursue such a literalism under rule 69(a) because "state rules are to be applied in a common sense manner and those which make sense only where applied to state courts need not be imported into federal practice." *Anderson v. Tucker*, 68 F.R.D. 461, 462–63 (D.Conn.1975). Sections 1245 and 1247 are essentially internal state venue provisions.[2] Jacobi asks the court to elevate these state venue provisions to the status of substantive abridgements[3] on the federal district court's jurisdiction to enforce its judgments.

As a matter of civil procedure and federal jurisdiction, we are without authority to comply with Jacobi's request. Rule 69(a) cannot be read to authorize a direct restriction on the federal district court's jurisdiction to enforce its judgments because the Federal Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts. . . ." Fed.R.Civ.P. 82. Nor does any principle of federal jurisdiction countenance a

**2.** That section 1245 contains an internal venue provision is highlighted by the fact that it was amended in 1979 to incorporate the general real property venue provision. *See* Cal.Code Civ. Proc. § 392 (West Supp.1980). Section 1245 now provides that a creditor seeking to enforce a judgment upon a homestead "shall apply to a proper court of record . . . as provided in Section 392 . . . ." Section 392 is a venue, not a jurisdictional provision. *Nelson v. Crocker National Bank*, 124 Cal.Rptr. 229, 51 Cal.App.3d 536 (3d Dist. 1975).

At the time this litigation was initiated Cal. Civ.Code § 1249 provided:

At the hearing the Judge may, upon proof of the service of the copy of the petition and notice, and of the facts stated in the petition, appoint three disinterested residents of the county to appraise the value of the homestead.

When read in conjunction with section 1249, sections 1245 and 1247 manifest an intent to ensure that only appraisers who are familiar with the fair market value of county real estate are appointed. By requiring the appointment of appraisers who reside in the county in which the land is situated, section 1249 advances that goal. Jacobi does not contend that the district court failed to observe the mandate of section 1249.

**3.** This case does not involve the issue of a federal district court's jurisdiction to enforce a judgment through a particular procedure when the applicable state law does not recognize such a remedy, *see Nelson v. Maiden*, 402 F.Supp. 1307, 1309–10 (E.D.Tenn.1975); *Old Honesty Oil Co. v. Shuler*, 11 F.2d 176, 178 (N.D.Okl.1926), *rev'd on other grounds*, 18 F.2d 894 (8th Cir. 1927); *see generally Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) (state statutory jurisdictional bar to state court suits to secure deficiency judgments on contracts for the purchase of real estate applies to federal court sitting in diversity), or the question whether federal jurisdiction exists when procedures that are "jurisdictional" prerequisites have not been observed. *See Mission Bay Campland v. Sumner Financial Corp.*, 71 F.R.D. 432, 434 (M.D.Fla.1976).

state's attempt to oust a federal district court of jurisdiction to enforce its judgments:

> In all cases where a general right is ... conferred, it can be enforced in Federal Court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provisions of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it has never been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court in such a case, is not subject to State limitation.

*Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571 (1871).

If a state attempted to restrict federal jurisdiction in the present context, the result would be even more devastating than that unsuccessfully proposed in *Whitton*. Unlike the state statute at issue in *Whitton*, section 1245 would divest the federal district court of jurisdiction to enforce both diversity *and* federal question cases because it would eliminate jurisdiction to enforce *judgments* regardless of the underlying cause of action or its jurisdictional predicate.

■ In determining jurisdiction, district courts of the United States must look to the sources of their power, Article III of the United States Constitution and Congressional statutory grants of jurisdiction, not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.[4] Because a literal reading of California Civil Code sections 1245 and 1247 is properly meaningful only when applied to an enforcement proceeding brought in the California state court system,[5] we conclude that the district court had jurisdiction to enforce its judgment.

AFFIRMED.

---

**4.** *See Donovan v. Dallas*, 377 U.S. 408, 412–13, 84 S.Ct. 1579, 1582–1583, 12 L.Ed.2d 409 (1964); *Terral v. Burke Const. Co.*, 257 U.S. 529, 531–33, 42 S.Ct. 188, 189, 66 L.Ed. 352 (1922); *Hayes Industries Inc. v. Caribbean Sales Associates*, 387 F.2d 498, 500 (1st Cir. 1978); *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n.*, 387 F.2d 768, 774 (3rd Cir. 1967); *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961); *Monogram Indus., Inc. v. Zellen*, 467 F.Supp. 122, 123 (D.Mass.1979); *S. E. C. v. First Tenn. Bank*, 445 F.Supp. 1341, 1343 (W.D.Tenn.1978); *Federal Deposit Ins. Corp. v. M. C. Honea, Jr., Inc.*, 440 F.Supp. 1064, 1066 (N.D.Ga.1977); *Bekoff v. Clinton*, 344 F.Supp. 642, 645 (S.D.N. Y.1972); *First Nat'l City Bank v. Gonzalez & Co. Sucr. Corp.*, 308 F.Supp. 596, 600 (D.P.R. 1970); *United States v. Slate's Estate*, 304 F.Supp. 380, 382, aff'd, 425 F.2d 1208 (5th Cir. 1970); *Rubel-Jones Agency, Inc. v. Jones*, 165 F.Supp. 652, 654 (W.D.Mo.1958); *compare Wheeler v. Shoemaker*, 78 F.R.D. 218, 212 (D.R.I.1978) (district court asserts its jurisdiction in medical malpractice diversity action despite plaintiff's failure to comply with state statute requiring initial resort to medical re-view panel and finds that review panel is arm of state judiciary in that state supreme court retains control over board and board's action constitutes a judgment) *with Edelson v. Soricelli*, 610 F.2d 131, 134–35 (3rd Cir. 1979) (medical malpractice review proceedings prerequisite to suit in either federal or state court; absent review panel determination, federal district court is without jurisdiction) *and Hines v. Elkhart Gen. Hosp.*, 465 F.Supp. 421, 424–25 (N.D.Ind.), aff'd, 603 F.2d 646 (7th Cir. 1979) (same).

**5.** Jacobi fully concedes that the district court properly implemented Cal.Civ.Code § 1245–61. *See, e. g., Yazoo & M. V. R. R. Co. v. Clarksdale*, 257 U.S. 10, 24, 42 S.Ct. 27, 31, 66 L.Ed. 104 (1921) (state procedure may require sale of real estate at state court house, not federal court house); *Bank of America Nat'l Trust & Savings Ass'n v. Bair*, 34 F.Supp. 857, 858 (D.Mont.1939), aff'd, 112 F.2d 247 (9th Cir. 1940) (referee need only be drawn from district court's jurisdiction, not from specific county as delineated in state statute).